■ CLARENCE W. ARRINGTON, Respondent-Appellant, v NEW YORK TIMES COMPANY, Appellant-Respondent, and CONTACT PRESS IMAGES, INC., et al., Defendants-Respondents. — Order, Supreme Court, New York County, entered April 7, 1980, which granted the motion of the defendants Contact Press Images, Inc., Gianfranco Gorgoni, and Robert Pledge to dismiss the complaint against them and granted the motion of the defendant *New York Times* to dismiss the complaint against it but granted leave to the plaintiff to serve an amended complaint against the *New York Times* for violation of the right to privacy not based on an alleged violation of sections 50 and 51 of the Civil Rights Law, modified, upon the law, to the extent of striking the leave to the plaintiff to serve

an amended complaint, and otherwise affirmed, without costs or disbursements. An article on the black middle class was published in the Sunday magazine section of the *New York Times.* A photograph of the plaintiff, not named, appeared on the cover of the section with a caption calling attention to the article inside. Claiming that he had never consented to the taking of the photograph, that the article was neither about him nor was he so much as mentioned in it, and that he strongly disagreed with its thesis, the plaintiff brought action for invasion of his right to privacy against the newspaper, the freelance photographer, the photographic agency and its president. His action claimed a constitutional and common-law right to privacy as well as such a right under sections 50 and 51 of the Civil Rights Law. (Pursuant to the leave granted by Special Term, plaintiff has served an amended complaint asserting a constitutional and common-law right to privacy.) Special Term ruled correctly that plaintiff has no cause of action under the Civil Rights Law, but neither does he have a cause of action for violation of a common-law or constitutional right of privacy. It has been consistently held in New York that there is no right to relief for invasion of privacy other than the statutory right granted by the Civil Rights Law *(Cohen v Hallmark Cards,* 45 NY2d 493; *Wojtowicz v Delacorte Press,* 43 NY2d 858). It may well be, as plaintiff maintains, that the Court of Appeals, when next confronted with the issue, will recognize a common-law right to privacy. Meanwhile, constraining precedent compels the holding by this court that no such right presently exists. No constitutional right to privacy authorizes this action. Where a constitutional right to privacy exists, it is to protect against governmental action or intrusion into purely familial matters (see *Roe v Wade,* 410 US 113; *Whalen v Roe,* 429 US 589; *Griswold v Connecticut,* 381 US 479). Efforts to expand this right beyond this scope have been rejected (see *Paul v Davis,* 424 US 693). Concur — Sullivan, Lupiano, Lynch and Carro, JJ.

Kupferman, J. P., dissents in a memorandum as follows: I would affirm the granting of leave to the plaintiff to serve an amended complaint against the *New York Times.* I would do this on a ground different from that stated by the court at Special Term. The plaintiff spells out a cause of action for violation of his right to privacy considered in Prosser's Law of Torts ( [4th ed], pp 812-813) as "False Light in the Public Eye": ("Another form in which it frequently appears is the use of the plaintiff's picture to illustrate a book or an article with which he has no reasonable connection, with the implication that such a connection exists — as where, for example, the face of an honest taxi driver is used to ornament a story about the cheating propensities of taxi drivers in the city. Still another is the inclusion of the plaintiff's name, photograph or fingerprints in a public 'rogue's gallery' of convicted criminals, when he has not in fact been convicted of any crime. The false light need not necessarily be a defamatory one, although it very often is, so that a defamation action will also lie.") The article printed in the Sunday magazine section of the *New York Times* of December 3, 1978, entitled "The Black Middle Class—Making It", was considered by some to be controversial, and the plaintiff found it offensive. However, the cover of the magazine used his photograph to illustrate the article, even though he had no connection whatever with the article, and, in fact, had no knowledge that his photograph would be used. Under the circumstances, he should be allowed to plead that cause of action. (See *Leverton v Curtis Pub. Co.,* 192 F2d 974, 978.)